INTERSTATE COMMERCE COMMISSION, State of Michigan, and State of Wisconsin, Plaintiffs,

v.

CHESAPEAKE AND OHIO RAILWAY CO., Defendant.

No. G77–243 CA.

United States District Court, W. D. Michigan, S. D.

June 30, 1977.

---

See also, 438 F.Supp. 666.

Daniel S. Linhardt, I. C. C., Washington, D. C., Robert J. Taube, Asst. Atty. Gen., State of Michigan, Lansing, Mich., E. Gordon Young, Asst. Atty. Gen., State of Wis., Madison, Wis., for plaintiffs.

James L. Wernstrom, Law, Weathers, Richardson & Dutcher, Grand Rapids, Mich., Richard B. Allen, C & O Railway, Cleveland, Ohio, for defendant.

## OPINION AND ORDER ON PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

MILES, District Judge.

Plaintiffs have initiated this action in an effort to compel the defendant to implement and advertise the operation of its entire fleet of three carferries on its cross Lake Michigan transit route between Ludington, Michigan and Milwaukee, Manitowoc, and Kewaunee, Wisconsin during the 1977 summer sailing season. Jurisdiction is founded on 28 U.S.C. § 1337, 49 U.S.C. § 901 *et seq.*, and Rule 65 of the Federal Rules of Civil Procedure. The Court has conducted extensive evidentiary hearings on May 31, June 1, and June 24, 1977 and enters this Opinion on the basis of the evidence adduced at these hearings in accordance with the provisions of Rule 65(d).

### I. Factual Background

The Chesapeake and Ohio Railway Company has operated its carferry service across Lake Michigan since absorbing its predecessor, the Pere Marquette Railway, on June 6, 1947. On July 25, 1947, the Interstate Commerce Commission issued an amended certificate and order transferring from the Pere Marquette to the C&O the authority to engage in specified water carrier operations. This Certificate of Public Convenience and Necessity provides, in relevant part:

> "That public convenience and necessity require operation, in interstate or foreign commerce, by The Chesapeake and Ohio Railway Company, as a common carrier by self-propelled vessels in the transportation of passengers, baggage, and motor vehicles loaded and empty, between the ports of Ludington, Mich., and Milwaukee, Manitowoc, and Kewaunee, Wis."

*Pere Marquette Railway, Merger*, 267 I.C.C. 297, 255 (1947). Number W–887.

The C&O has since maintained this service, expanding it beginning in the early 1950's and contracting it in the late 1960's. (Plaintiffs' Exhibit 1, pages 1–18 and 1–19). In 1972, an effort to abandon the Kewaunee route was denied. (*Id.*, at 1–19). On March 18, 1975, the C&O filed an abandonment petition for its entire ferry service with the ICC. (*Id.*, at 1–3 and 1–19).

Since 1971, the C&O has operated two vessels during the fall, winter, and spring months and three vessels during the summer season, extending approximately from Memorial Day to Labor Day. In the spring of 1977, defendant announced that it in-

tended to operate only two vessels during the 1977 summer sailing season and published a schedule providing for thirty-two scheduled weekly sailings in contrast to the fifty-two scheduled weekly sailings it provided in the summer of 1976. This lawsuit followed.

## II. The Initial Hearing

At the first hearing before this Court held on May 31 and June 1, 1977, plaintiffs contended that defendant's proposed reduction in service violated its obligation as a common carrier by water to provide and furnish the transportation which it holds itself out to perform upon reasonable request therefor, as provided in 49 U.S.C. § 905(a), as well as its mandate under the Certificate of Public Convenience and Necessity. Plaintiffs called statisticians who testified that C&O's proposed reduced schedule would not be sufficient to accommodate the demand of the public for carferry transportation during the months of July and August. (Testimony of Leigh Rosenberg and Robert Hasek). It was also testified that the demand for the carferry service presently appears to be heavier in 1977 than it has been in recent years. (Testimony of Emery Marrison).

At the hearing, defendant responded that it has already incurred a $5.9 million deficit for the first three months of 1977 (Testimony of John T. Collinson) and that it anticipated incurring a loss of approximately $596,000 if compelled to operate a third carferry during the 1977 summer sailing season. (Testimony of John T. Collinson and James R. White; Defendant's Exhibit D). The C&O also voluntarily proposed increasing the two vessel summer schedule from thirty-two to fifty weekly sailings, a modification which, it was contended, could accommodate 100 per cent of the anticipated freight car traffic, 100 per cent of the anticipated passenger traffic, and in excess of 90 per cent of the anticipated revenue automobile traffic. (Testimony of James R. White; Defendant's Exhibit E). It is the position of C&O that such a schedule complies with its statutory and administrative

duties, particularly in light of Item 25 of its tariff, which provides:

"On account of limited space on decks of boats, the Chesapeake and Ohio Railway Company reserves the right to limit the shipment of vehicles as necessary to conform to space available."

At the conclusion of the hearing, the Court directed the defendant to initiate and advertise its proposed fifty weekly sailing schedule on June 8. In recognition of the evidence that July and August are the months of heaviest demand and the possibility that the defendant would be unable to operate its proposed expedited schedule within the stricter time limits imposed, the Court ordered that a further hearing be held on June 24 to evaluate the results of C&O's operations between June 8 and June 21.

## III. The Follow-Up Hearing

At the second hearing on June 24, defendant attempted to demonstrate that for the period of June 8 through June 21, 1977, it had provided service equivalent to that provided in recent years in which three boats, rather than two, were operated. For example, it represented that 75 per cent of its arrivals during the two week trial period this year as compared with 79 per cent in 1976 were within fifteen minutes of the scheduled arrival time, a standard considered reasonable in air transportation and stipulated by plaintiffs' counsel. 14 C.F.R. §§ 234.1(d) and 234.3. (Defendant's Exhibits K and L; June 24 stipulation of Daniel S. Linhardt). Moreover, assuming maximum utilization, there was a 38 per cent excess capacity for automobiles and a 79 per cent excess capacity for passengers during the two week June trial period. (Defendant's Exhibit N as revised during the June 24 hearing).

Plaintiffs contest the practicality of these figures on the grounds that they are based on the allegedly unrealistic assumptions that no empty freight cars are carried and that there is uniform utilization of capacity. They further contend that even if the June figures were reflective of the actual opera-

tion of the carferries and desires of the public, they would still not justify two vessel service during July and August because of the historically greater demand for the service during those months.

## IV. Review of the Evidence

In conjunction with defendant's determination that it could satisfy its statutory and administrative duties by providing two vessel service during the 1977 summer sailing season, it instituted a new procedure whereby empty freight cars, which were formerly transported by carferry, would be moved around Lake Michigan in freight trains, thereby making more space available on the boats for handling automobiles. Accepting defendant's undisputed projection that it will move 2,039 freight cars in trains during the 1977 summer season which were formerly transported by carferry, and counsels' stipulation that one freight car occupies the deck space of approximately 3.65 motor vehicles (Stipulation of June 24 read into the record by Robert J. Taube), this new policy should provide space for an additional 7,442 automobiles, as compared to previous years. Accepting the additional undisputed estimate of C&O that there is an average of three passengers per automobile, extra room should thus be created for 22,326 passengers. Plaintiffs neither contested these figures nor presented evidence to demonstrate that the defendant was not so diverting its empty freight cars. Accordingly, they may be considered.

Plaintiffs also maintain that defendant's figures are unrealistic and exaggerate defendant's actual ability to serve the needs of the public in that they are based on the explicit and allegedly fallacious assumption of maximum utilization of capacity, that is, that 100 per cent of the available automobile and passenger space will be utilized on each trip of each vessel. In response, C&O contends that a substantial portion of its automobile and passenger traffic consists of persons interested in making the trip for its own sake and thus unconcerned as to the time they depart or arrive. This contention is at least partially supported by the testimony of Emery Marrison, plaintiffs' witness, who stated that people will agree to change their preferred sailing choice about half of the time. Moreover, C&O's night time sailings, those with departure or arrival times between midnight and 6:00 a. m., which are purported to be the least desirable to travelers, constitute 38 per cent of its total scheduled summer sailings for 1977 compared with 37 per cent in 1976 and 54 per cent in 1975. (Defendant's Exhibit M as revised with stipulated calculations read into the record by Daniel S. Linhardt).

While maximum utilization of capacity is a state of affairs which is rarely achieved in actual practice, it does not follow that it is an invalid assumption for raw mathematical calculations. Indeed, it is a goal toward which defendant should strive in fairly and efficiently serving the public and its stockholders. At this time, insufficient evidence has been introduced to permit a determination of the margin of error built into the assumption of maximum utilization in this situation. Since the defendant has been able to accommodate the demand for its services thus far during the month of June, 1977, the credibility of the assumption has simply not yet been tested. Accordingly, the Court neither accepts nor rejects it in toto at this time.

It is conceded that C&O can accommodate the reasonably anticipated demand of freight cars and passengers without automobiles without operating a third vessel. Defendant's ability to accommodate passengers with automobiles is in dispute. It has been established that the summer demand for service increases through July and peaks with the advent of the eastbound grain shipments during August. (Testimony of William R. Neil). In recent years, July revenue automobile traffic has reflected an increase over June revenue automobile traffic varying between about 40 and 90 per cent, and August revenue automobile traffic has reflected an 80 to 100 per

cent increase. (Plaintiffs' Exhibit 2 as revised and interpreted by David Feigenbaum and Leigh Rosenberg at the June 24 hearing).

During the two week trial period of June 8–21, 1977, defendant could have accommodated 38 per cent more revenue automobiles on the two carferries operated than were actually carried. (Defendant's Exhibit N as revised). In July of 1976, the C&O carried 38 per cent more revenue automobiles than it did in June of 1976. (Plaintiffs' Exhibit 2 as revised). Thus, assuming (1) that the June, 1977 trial period is representative of the entire month, which seems probable since it represents the two weeks in the middle of the month, and (2) that the 1977 demand is not substantially greater than the 1976 demand, which is suggested by Defendant's Exhibit N, which reveals that June, 1977 revenue automobile traffic increased 10 per cent over that of 1975, the last totally representative year because of the nineteen day dysfunction of the "Spartan" (one of defendant's three ships) in August, 1976; it is reasonable to conclude that by continuing to operate two carferries on a fifty sailing per week schedule, the defendant will be able to provide adequate service upon reasonable demand for the first three weeks of July, 1977.

### V. Conclusion

The Court thus concludes that the defendant has presented a satisfactory basis for its contention that it has been able to provide adequate service upon reasonable demand during the month of June, 1977, and a plausible case for its contention that it will be able to provide such service during the first three weeks of July, 1977. In making this determination, the Court has placed heavy reliance on the data and calculations of Exhibits 2, E, and N. These same exhibits considered in light of the entire record, however, also indicate that because of the established heavier demand for service during late July and August and the apparent increased demand for service during 1977 as compared with previous years, the defendant may be unable to satisfy its statutory and administrative duties with the operation of two vessels during that time period.

Accordingly, the Court will conduct a further hearing on this matter at 9:00 a. m. on July 20, 1977, at which time the defendant will be called upon to justify its continuation of two vessel service through August, 1977. To facilitate an orderly and informed presentation and determination, counsel for defendant are directed to tender to the Court and counsel for plaintiffs, at least forty-eight hours before the hearing, the relevant data and information reflecting the daily demands for, and provision of, service from June 22 through July 15, 1977. In accordance with its counsel's representation that C&O is capable of placing its third vessel into operation upon one week's notice, defendant should be prepared to institute three vessel service beginning on July 26, 1977 if its proofs at the July 20 hearing do not prevail.

For the foregoing reasons, plaintiffs' motion for a preliminary injunction is denied without prejudice at this time, and defendant may continue to adhere to its two vessel fifty weekly sailing schedule, with the route modification to service the Green Bay and Western Railroad requested by Mr. Collinson at the June 24 hearing, until July 25, 1977, or the further Order of this Court. The Court shall maintain continuing jurisdiction over this action.

IT IS SO ORDERED.